IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| STEFANIE KARAGEORGE, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> GRANITE GROUP REALTY SERVICES,[1] ) <br> and ALAN DESTEFANO, *Individually*, ) <br> ) <br> Defendants. ) <br> _____ ) | No. 2:23-cv-05895-DCN <br><br> **ORDER** |

This matter is before the court on defendants Granite Group Realty Services ("Granite") and Alan Destefano's ("Destefano") (together, "defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 4. For the following reasons, the court grants the motion.

## I.  BACKGROUND[2]

Plaintiff Stephanie Karageorge ("Karageorge") is a South Carolina resident who owns a rental property in Plymouth, New Hampshire (the "Property"). ECF No. 7-1 ¶¶ 3–4. She claims that she hired Granite to manage the Property for her. ECF No. 1-1, Compl. ¶ 6. Granite is based in New Hampshire, and Destefano is Granite's broker and owner. Id. ¶¶ 2–3. In an affidavit supplied with defendants' motion, Destefano states that he is a resident of New Hampshire and that neither he nor Granite has any business presence in South Carolina. ECF No. 4-1 ¶¶ 3–7.

---

[1] The docket indicates that defendant Granite Group Realty Services is called "Granite Group Reality Services," but the parties spell the name of this defendant as "Granite Group Realty Services" in their filings. The court will follow the filings and refer to the defendant as "Granite Group Realty Services."

[2] The court recites the factual background in a light most favorable to Karageorge. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

1

This lawsuit stems from Karageorge's allegations that one of Granite's agents, Ronda Rayno ("Rayno"), entered the Property in February 2023 while under the influence of marijuana and painkillers, attempted to turn off the lights while exiting the Property, but inadvertently turned off the furnace instead. Compl. ¶¶ 9–11. Pipes in the Property froze.[3] See Compl. ¶ 13. Rayno later went to the Property to meet a repairman, who was called to check on the frozen pipes. See id. ¶¶ 9, 13. Once the repairman arrived, Rayno started smoking marijuana in the Property, began hallucinating, and decided to leave the Property to go "sleep." Id. ¶¶ 14, 16. After being left without supervision from Granite, the repairman thawed the pipes using a heater, which resulted in the pipes bursting and flooding the Property. Id. ¶¶ 16–17.

The flooding caused extensive water damage throughout the Property. Id. ¶ 16. Despite Destefano charging Karageorge $250.00 for cleanup, the cleanup never occurred, and the Property was still in disarray as of April 3, 2023. Id. ¶ 20. Beyond that, potential tenants were unable to move in due to the Property's state of disrepair. Id. ¶ 19. These potential tenants had already paid for their first month's rent, and despite their being unable to move in, Granite kept this money. Id. Karageorge maintains that she has lost a significant amount of rental income because of her inability to rent out her Property over several ensuing months. Id.

After detailing the alleged frozen pipe incident in her complaint, Karageorge goes on to briefly list various other purportedly tortious acts by Granite and its employees.

---

[3] Though not entirely relevant to the pending motion, the complaint is unclear on whether Karageorge is alleging the pipes froze as a result of Rayno's actions. While that is certainly the implication, Karageorge alleges that Rayno entered the Property and turned the furnace off on February 6, 2023, but Karageorge seems to be saying the pipes froze on February 5, 2023. See id. ¶¶ 9–13, 15.

2

She accuses Rayno of scheming to overcharge property owners for repairs; she claims that Granite lost the keys to her Property and left it unlocked; and she contends Granite damaged her Property in other ways, such as by removing her smoke detector, scratching her wooden floors, painting her bathroom a different color, failing to fix holes, and failing to fix her garbage disposal.  See id. ¶¶ 17–18, 20.

Karageorge initially filed this lawsuit in the Charleston County Court of Common Pleas on September 27, 2023.  Karageorge v. Granite Grp. Reality Servs., No. 2023-CP-10-04744 (Charleston Cnty. Ct. C.P. Sept. 27, 2023).  She alleges six causes of action: (1) breach of contract, (2) breach of contract accompanied by a fraudulent act, (3) negligence, (4) negligent misrepresentation, (5) unjust enrichment, and (6) violation of the Unfair Trade Practices Act.  Compl. ¶¶ 21–50.  She served the complaint on defendants on October 17, 2023, and this case was removed to this court on November 17, 2023.  ECF No. 1.  Later the same day of removal, defendants moved to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2) based predominantly on their contention that this court lacks personal jurisdiction over them.  ECF No. 4.  Karageorge responded in opposition on December 14, 2023.  ECF No. 7.  As such, this matter is now ripe for the court's review.

## II.  STANDARD

A party may challenge the court's power to exercise personal jurisdiction over it through a motion under Federal Rule of Civil Procedure 12(b)(2).  "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction."  Combs v. Bakker, 886 F.2d 673, 676

(4th Cir. 1989).  The plaintiff's burden varies depending on the stage of the litigation, the posture of the case, and the evidence before the court.  Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); Sec. & Exch. Comm'n v. Receiver for Rex Ventures Grp., LLC, 730 F. App'x 133, 136 (4th Cir. 2018).

"As with many pretrial motions, a court has broad discretion to determine the procedure that it will follow in resolving a Rule 12(b)(2) motion." Grayson, 816 F.3d at 268.  The district court may resolve a personal jurisdiction question with reference only to "the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint." Id.  In these instances, "a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Id.  "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676.  "[H]owever, the court need not 'credit conclusory allegations or draw farfetched inferences.'" Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000) (unpublished table decision) (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

If the plaintiff's allegations are sufficient to make a prima facie case for personal jurisdiction, the court may deny the Rule 12(b)(2) motion and later revisit the question or defer ruling on the motion until the parties have had the opportunity to develop the factual record.  Combs, 886 F.2d at 676; Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd., 911 F.3d 192, 196–97 (4th Cir. 2018).  In such instances, the court must either decide the issue based on an evidentiary hearing or at trial.  Combs, 886 F.2d at 676.

Between these two options, the preferred course is for the district court to hold an evidentiary hearing to resolve the jurisdictional question "as a preliminary matter." Grayson, 816 F.3d at 268. When the factual record is developed and presented to the court either at an evidentiary hearing or at trial, the plaintiff has the burden of proving facts supporting jurisdiction by a preponderance of the evidence. Id.

If the court elects to hold an evidentiary hearing, the court may—but is not required to—hear live testimony from witnesses. Id. at 268–69. "It may also consider jurisdictional evidence in the form of depositions, interrogatory answers, admissions, or other appropriate forms." Id. at 269. "At bottom, a district court properly carries out its role of disposing of a pretrial motion under Rule 12(b)(2) by applying procedures that provide the parties with a fair opportunity to present to the court the relevant facts and their legal arguments before it rules on the motion." Id.

### III.   DISCUSSION

Defendants move to dismiss Karageorge's complaint under two alternative theories. First, they claim that this court does not have personal jurisdiction over them and assert that the claims against them should accordingly be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2). ECF No. 4 at 2–5. Second, they alternatively argue that the case should be dismissed under the doctrine of forum non conveniens because New Hampshire is a better forum for litigation of this dispute. Id. at 5–6. The court will begin its analysis by considering defendants' argument on personal jurisdiction. Ultimately, the court finds that it does not have personal jurisdiction over defendants and, therefore, need not consider defendants' alternative forum non conveniens argument.

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). Thus, in evaluating a challenge to personal jurisdiction, the court engages in a two-step analysis. Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). First, it must find that the forum state's long-arm statute authorizes the exercise of jurisdiction under the facts presented. Id. Second, if the statute does authorize jurisdiction, then the court must determine if its exercise of personal jurisdiction is consistent with due process. Id. South Carolina's long-arm statute extends its reach to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002); Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005); see S.C. Code Ann. § 36-2-801, et seq. Consequently, the two-step inquiry compresses into a single question: whether the court's exercise of personal jurisdiction comports with due process. Maseng v. Lenox Corp., 483 F. Supp. 3d 360, 364–65 (D.S.C. 2020).

Personal jurisdiction over a nonresident defendant can be either specific or general. Centricut, 126 F.3d at 623–24. General jurisdiction arises when the nonresident defendant's contacts with the forum state "are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 317 (1945)). General jurisdiction may be exercised even when the suit is unrelated to the defendant's contacts within the forum state. See S.C. Code Ann. § 36-2-802; Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 416 (1984). Karageorge does not argue that the court has general jurisdiction, so the

court will limit its analysis to whether it may exercise specific jurisdiction over the defendants. See ECF No. 7 at 2–4.

In contrast to general jurisdiction, specific jurisdiction may only be exercised when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales, 466 U.S. at 416. Exercising specific jurisdiction does not comport with due process unless the defendant has purposefully established sufficient "minimum contacts" with the forum state and the exercise of jurisdiction comports with notions of "fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475. Upon a showing of the defendant's purposeful availment, the fairness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. World-Wide Volkswagen, 444 U.S. at 292.

Thus, the Fourth Circuit applies a three-part test when evaluating the propriety of a court exercising specific jurisdiction: (1) whether the defendant purposely availed itself of the privileges of conducting activities in the forum state and thus invoked the benefits and protections of its laws, (2) whether the plaintiff's claims arise out of or relate to those

forum-state activities, and (3) whether the exercise of jurisdiction is constitutionally reasonable. Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001). "If the plaintiff meets the first two prongs, then the burden shifts to the defendant to show that exercising jurisdiction would be unreasonable." White ex rel. White v. Aetna Life Ins. Co., 519 F. Supp. 3d 253, 259 (W.D.N.C. 2021). The plaintiff must ultimately prevail on all three prongs to show that the exercise of specific jurisdiction over a defendant comports with due process. Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 189 (4th Cir. 2016).

Turning to the first prong, the Fourth Circuit determines whether a nonresident defendant has purposefully availed itself of the privilege of conducting business in a forum state by looking to a list of several nonexclusive factors:

> (1) "whether the defendant maintains offices or agents in the forum state;" (2) "whether the defendant owns property in the forum state;" (3) "whether the defendant reached into the forum state to solicit or initiate business;" (4) "whether the defendant deliberately engaged in significant or long-term business activities in the forum state;" (5) "whether the parties contractually agreed that the law of the forum state would govern disputes;" (6) "whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;" (7) "the nature, quality and extent of the parties' communications about the business being transacted;" and (8) "whether the performance of contractual duties was to occur within the forum."

Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 560 (4th Cir. 2014) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)). "A defendant's actions that are directed at the forum state in only 'a random, fortuitous, or attenuated way' are insufficient to support jurisdiction." ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012) (quoting Centricut, 126 F.3d at 625).

Defendants claim that Karageorge has not specifically pleaded any allegations that could be considered sufficient contacts with South Carolina for this court to exercise

personal jurisdiction. ECF No. 4 at 4. They further assert that all of the events giving rise to Karageorge's claims took place in New Hampshire; that defendants do not maintain any form of presence or business operations in South Carolina; and that Granite's website does not reference South Carolina, meaning defendants do not target business within South Carolina. Id.

In her response to defendants' motion, Karageorge argues that defendants purposefully availed themselves of the privileges and protections of South Carolina based on their business contacts. ECF No. 7 at 2–3. She says that defendants "derived revenue from services rendered to the Plaintiff while Plaintiff was in South Carolina" and that defendants "knowingly sent [their] business communications and contacts to Plaintiff in South Carolina and solicited the Plaintiff in South Carolina." ECF No. 7 at 2–3. However, she does not expound on these arguments, nor does she provide many additional details on the extent of defendants' business operations in this state.

To support these claims, Karageorge filed an affidavit along with her response, but the affidavit is similarly bereft of details about defendants' business contacts in South Carolina. See ECF No. 7-1. In fact, the affidavit mentions South Carolina in only five of its eight paragraphs, and these references are both conclusory and unhelpful.[4] Id. ¶¶ 3, 5–8.

---

[4] Karageorge's references to South Carolina in her affidavit are as follows:

3.     I [Karageorge] live in Charleston, South Carolina. I am a South Carolina resident. I live in Mount Pleasant, South Carolina and work on the Isle of Palms.
  . . .
5.     The Defendant [sic] and I entered into a contract and the Defendant repeatedly contacted me while I was in South Carolina.
6.     The Defendants transacted business in South Carolina.

Details are similarly sparse in Karageorge's complaint. See Compl. In her factual allegations section,[5] she mentions South Carolina only three times. First, she alleges, "Granite Group Realty advertised in South Carolina and elsewhere for its property management services and directed legal contacts, correspondence, and other efforts to do business with Plaintiff here in South Carolina." Id. ¶ 6. Second, she alleges, "[t]he contract was written by Granite Group Realty and submitted to the Plaintiff in South Carolina." Compl. ¶ 8. Third, she claims "[o]n or about February 6, 2023, one of the property managers and agent for Granite Group Realty, [Rayno], called Ms. Karageorge in South Carolina to put a hundred-gallon of oil in the tank until the tenants catch up."[6] Id. ¶ 9.

What's more, even if Karageorge's factual assertions were sufficiently detailed to support a finding of purposeful availment, Karageorge almost entirely forsakes her responsibility to tie her factual claims to the relevant legal considerations. In her

---

7. The contract, which the Defendant [sic] sent to South Carolina, has language in it that makes the Defendant responsible for property management and the heat, and other obligations concerning a New Hampshire rental property. The heat failed and the pipes burst causing damage to the Property.
8. I live in South Carolina and it would be a hardship if my case is moved to New Hampshire.

ECF No. 7-1 ¶¶ 3, 5–8.

[5] In her jurisdictional allegations, she mentions that she is a citizen of South Carolina, that Granite is a New Hampshire-based business entity, and that Destefano owns Granite. See id. ¶¶ 1–3.

[6] Even if the court knew what this sentence meant, it would only be relevant for the court's present purposes to the extent it asserts that Rayno had a phone call with Karageorge while Karageorge was in South Carolina and that the phone call related to the heating oil issue in some way.

response, Karageorge does not cite a single Fourth Circuit opinion,[7] much less relate her allegations to the Universal Leather factors. Even if the court were to liberally construe her argument, her allegations appear to focus on only the fourth factor—defendants' business activities in South Carolina—and the seventh factor—defendants' business communications.[8] The court considers her argument as to those two factors in turn,

---

[7] In the entirety of Karageorge's response, she cites to four cases. The first is the South Carolina Supreme Court's decision in Cockrell, 611 S.E.2d 505, which Karageorge uses to support the proposition that South Carolina's long-arm statute reaches the limits of due process. ECF No. 7 at 2. The second is the South Carolina Supreme Court's decision in Brown v. Investment Management & Research, Inc., 475 S.E.2d 754 (S.C. 1996), which Karageorge cites for the conclusory statement that "Defendant [sic] knowingly sent its business communications and contacts to Plaintiff in South Carolina and solicited the Plaintiff in South Carolina." ECF No. 7 at 3. The third is the United States Supreme Court's decision in International Shoe, 326 U.S. 310, which Karageorge cites for the conclusory statement that defendants' "contact with South Carolina was purposeful and the Defendant [sic] had more than minimum contacts with the State." ECF No. 7 at 3. The fourth is the United States Supreme Court's decision in Hanson v. Denckla, 357 U.S. 235 (1958), which Karageorge cites for the conclusory statement that "Defendant [sic] purposely availed himself [sic] the opportunity to make profit from a South Carolina resident." ECF No. 7 at 3.

[8] Karageorge's allegations do not touch on the other Universal Leather factors. For example, she has not alleged that defendants maintained an office in South Carolina, that defendants own property in South Carolina, that defendants engaged in significant or long-term business activities in South Carolina, that the parties agreed South Carolina law would govern their dispute, that the defendants ever made in-person contact with her in South Carolina, or that the parties' contract called for the performance of duties in South Carolina. See id. In contrast, her allegations make clear that the parties' contract called for the maintenance of a property in New Hampshire. See Compl. ¶ 6. Moreover, even if defendants knowingly sent the contract to Karageorge while she was in South Carolina, the only address listed for Karageorge in the contract is that of the rental Property in Plymouth, New Hampshire. See ECF No. 1-1 at 13, 15. Thus, even if defendants did send the contract to Karageorge while she was in South Carolina, it is unclear whether defendants even knew she was a South Carolina resident at the time. To the extent these factors are relevant to this case at all, they weigh against this court exercising personal jurisdiction. See Universal Leather, 773 F.3d at 560.

ultimately finding that, even with reference to those two factors, Karageorge has not established that this court has specific personal jurisdiction over the defendants.

As for the fourth factor, Karageorge's allegations could be construed as assertions that defendants advertised in South Carolina, that defendants entered this single contract with her while she was a South Carolina resident, and that defendants contacted her about the parties' business relationship while she was in South Carolina.  See Compl. ¶¶ 6, 8, 9; see also ECF No. 7-1 ¶¶ 3, 5–8.  To the extent these allegations are not conclusory, they are insufficient to prove purposeful availment.  While a single contract with a resident of the forum state may sometimes be sufficient to establish minimum contacts, such is only the case in "rare" instances and only when the contract "created continued obligations between [the defendant] and residents of the forum." Pet Specialties, LLC v. Navisiontech, Inc., 2019 WL 4773623, at *5 (M.D.N.C. Sept. 30, 2019) (quoting Perdue Foods, 814 F.3d at 190).  "In Perdue Foods, the Fourth Circuit contrasted the 20-year franchise agreement that gave rise to personal jurisdiction in Burger King with an agreement that did not 'launch any ongoing collaboration or promise frequent interactions,' holding that the later did not establish 'significant or long-term business activities in the forum state." Id. (citations omitted).  Put simply, "[a] contract with a resident of a forum state does not automatically constitute sufficient contacts to support the forum's assertion of specific jurisdiction, even where the dispute arises from the contract." Le Bleu Corp. v. Standard Cap. Grp., Inc., 11 F. App'x. 377, 380 (4th Cir. 2001) (citing Burger King, 471 U.S. at 478).  Thus, without additional details, this factor weighs against a finding of purposeful availment.

As for the seventh factor, Karageorge's allegations about defendants' business communications are similarly insufficient for her to establish that defendants purposefully availed themselves of the privilege of doing business in South Carolina. To reiterate, Karageorge alleges that defendants contacted her while she was in South Carolina when they initially sent her the contract and that Rayno called her while she was in South Carolina to discuss the heating oil issue.[9] See Compl. ¶¶ 8, 9. She also attaches to her complaint a series of text messages sent between herself and Rayno, in which she and Rayno discuss the heating oil problem and Rayno's drug use. See ECF No. 1-1 at 24–35.

The Fourth Circuit has found that business communications with a resident of the forum state are sufficient to establish purposeful availment when those communications are "substantive deliberations," "frequent," "vigorous business solicitations," and "repeatedly" instigated by the defendant in an effort to do business with the plaintiff. See Sneha Media & Ent., 911 F.3d at 200 (first quoting Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 305–06 (4th Cir. 2012); then quoting Universal Leather, 773 F.3d at 560–61; and then citing CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 287, 295 (4th Cir. 2009)). "District Courts in the Fourth Circuit have consistently held that even very extensive communications are not dispositive of the defendant's purposeful availment, unless the parties had an extensive,

---

[9] She also claims that defendants "directed legal contacts, correspondence, and other efforts to do business with Plaintiff here in South Carolina." Compl. ¶ 6; see also ECF No. 7-1 ¶ 5 (Karageorge's affidavit in which she attests that defendants "repeatedly contacted [her] while [she] was in South Carolina"). This allegation is conclusory and need not be considered by the court when deciding the pending motion. See Masselli & Lane, 215 F.3d 1320.

13

substantive, or continuing relationship that tied their behavior to the forum state." Alacrity Renovation Servs., LLC v. Long, 2016 WL 4150011, at *7 (W.D.N.C. Aug. 3, 2016). The occasional contacts mentioned by Karageorge, which happened to have taken place while she was in South Carolina, fall well short of this standard. See Sneha Media & Ent., 911 F.3d at 200; Zurich Ins., 685 F.3d 376.

Altogether, Karageorge has not demonstrated a prima facie case for purposeful availment. As such, she has failed to show that defendants had sufficient minimum contacts for this court to exercise personal jurisdiction over them, and the court dismisses this case accordingly.[10] See Perdue Foods, 814 F.3d at 189. As such, the court will not proceed to consider defendants' alternative forum non conveniens argument.[11]

---

[10] Because Karageorge has failed to make a prima facie case for purposeful availment, the court need not consider the remaining prongs of the specific jurisdiction analysis. See Perdue Foods, 814 F.3d at 192. Even if the court were to proceed to the second prong, it could not do so because Karageorge has neglected to provide any specific argument over whether defendants' purported contacts with South Carolina form "the genesis of [the] dispute," Tire Eng'g & Distrib., 682 F.3d at 303 (alteration in original) (quoting CFA Inst., 551 F.3d at 295), and the court will not hazard to invent an argument on her behalf, see United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Likewise, because Karageorge has failed to carry her burden on the first two prongs, the burden does not shift to the defendants to prove that the exercise of jurisdiction would be unreasonable, so the court does not consider the third prong either. Cf. White, 519 F. Supp. 3d at 259.

[11] Forum non conveniens is a common law doctrine that allows a court to dismiss a case when it would be more convenient to litigate the case in a different jurisdiction. See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007). However, when the case is in a district court of the United States and the alternative forum is a different district court of the United States, the proper remedy is to transfer the case to the appropriate district pursuant to 28 U.S.C. § 1404(a), rather than dismissal. Id. at 430. Section 1404(a) permits this court to transfer a case to any district where the case might have been originally brought. 28 U.S.C. § 1404(a).

If the court were to reach defendants' forum non conveniens arguments in this case, it would find that the District of New Hampshire is an appropriate alternative forum and would transfer this case to that district accordingly. See id. By instead granting defendants' motion to dismiss, the court is allowing Karageorge to choose her New

## IV. CONCLUSION

For the foregoing reasons, the court **GRANTS** defendants' motion and **DISMISSES** this case.

    **AND IT IS SO ORDERED.**

                                    **DAVID C. NORTON**
                                    **UNITED STATES DISTRICT JUDGE**

**March 8, 2024**
**Charleston, South Carolina**

---

Hampshire forum.  If she decides to continue her pursuit of this case, she may do so in either state or federal court in New Hampshire.